## Coffman v. Central City et al.
(Decided Jan. 19, 1937.)

TAYLOR & MILAM for appellant.

T. E. SPARKS for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming in part and reversing in part.

The suit is prosecuted for the purpose of testing and establishing the legality of a 4½ per cent. bond issue for $20,000 to fund a floating debt of Central City. The chancellor held the same to be valid.

· The ordinance recites, in effect, that during the eight-year period of 1928 to 1935 an indebtedness of $20,000 had been incurred in the necessary maintenance and operation of the government of the city, which was represented by unpaid warrants issued for loans and other obligations. It is further declared that the condition arose from deficits in the anticipated revenue for the period. Following the preamble setting forth these and other material facts it was duly ordained that bonds to the amount of $20,000 "or so much thereof as may be found by judgment of the court to be a legal obligation of the city be funded."

General improvement bonds to the amount of $100,-000 had been voted and issued in 1925. This bonded debt has been progressively reduced at the rate of $5,000 annually by a special 40-cent levy. It is made to appear that at no time during this period involved did the city incur a liability which, added to this bonded indebtedness, exceeded the constitutional limit of 5 per cent. to which cities of the fourth class are restricted.

The pleading and proof established the anticipated revenue for each year which was made up of the following items: "Assessed values," "poll taxes," "fines," "licenses," "delinquent taxes," and "miscellaneous receipts." The sums actually received from each item and the total amount of warrants issued during each year were shown. For 1928 and 1929, the' actual receipts were slightly in excess of the obligations assumed. During the following years, there were these deficits: for 1930—$1,055.06; for 1931—$4,435.09; for 1932—$3,301.06; for 1933—$7,157.12; for 1934—$3,-313.76. For 1935 there was an excess income of $2,-621.79.

It was shown that to no extent did the obligation assumed each year exceed the "anticipated revenue" as made up of all the items listed above. The "Assessed Values" were computed upon the total assessment of property for the previous year (shown in evidence) at the rate of 75 cents, which is the authorized maximum levy (sec. 157, Constitution of Kentucky) and which had been levied each year. The poll taxes were calculated upon the average number of polls with a levy of $1.50. The other items were estimated upon experience. But it must be said that those estimates were quite liberal

as compared with the actual collections of the previous year. The greatest difference between the estimates and the receipts was in the ad valorem taxes.

As to what may be properly regarded in anticipating revenue, that is, in estimating the "income and revenue provided" (as it is termed in sec. 157 of the Constitution), it is too well settled to need citation of authority that the assessed valuation of the property and the maximum rate authorized by law may be considered. Also that a reasonable estimate of the poll taxes is permissible. In the matter of city licenses and occupational taxes, we stated in Premier Construction Co. v. Kimmell, 230 Ky. 439, 20 S. W. (2d) 77, 81:

> "We are therefore of the opinion that, where the proof shows, as it does here, that an adequate experience of the taxing body has demonstrated that the return on license and occupational taxes has become stabilized and dependable, such taxing body may take them into consideration in estimating its revenues. Thus the law is in harmony with practical experience."

See, also, Nourse v. City of Russellville et al., 265 Ky. 96, 95 S. W. (2d) 1096, 1098.

In the instant case the levies of such licenses and occupational taxes were proved, as was the fact that the experience of previous years demonstrated the stability and probability of the amount of income from that source.

As to the items of "Fines" and "Miscellaneous Receipts" included in the anticipated revenues. We are of the opinion that because of their nature, uncertainty, and indefiniteness, they should not be included in any estimate of revenue to be collected in future. It was so indicated as to fines in Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 31 Ky. Law Rep. 278, 12 L. R. A. (N. S.) 433, and in Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855. It was not necessary to decide in Nourse v. City of Russellville, supra, that these items were too unstable and indefinite to be considered for such was conceded. But, when they have ceased to be speculative and the money has been received, it certainly cannot be disregarded. So, for the purpose of determining whether an indebtedness did in

fact exceed the revenues provided for or by a municipality for a given year, the actual receipts from both sources of income may be taken into consideration. In short, they may be considered retroactively, but not prospectively.

As to the item "Delinquent Taxes." There is no evidence other than that the officials had always been diligent in collecting back taxes and the proof of the actual collections. It is very likely, however, that as to the years subsequent to 1928 the estimate as well as the actual collection of delinquent taxes included taxes for some part of the eight-year period during which the floating debt arose. For example, the estimate of delinquent taxes to be collected in 1935 undoubtedly included taxes assessed and already regarded in the estimate of such receipts in 1934. Hence, to that extent there is a duplication in the estimated or anticipated revenue. To the extent of such duplication such estimates cannot be considered. But in the instant case we can disregard that item because the sum total of the anticipated revenue for every year from ad valorem, poll and license taxes, plus the actual receipts from fines and miscellaneous items, exceeded the amount of expenditures and obligations assumed. Eliminating the estimates from that source, the debt was proven to be legal in so far as it did not exceed "the income and revenue provided for such years."

The itemized list of outstanding warrants filed with the pleadings were proven to be as shown by the books of the city. Qualified witnesses testified as to each separate warrant concerning the date, payee, amount, and what it was for. They also proved that each warrant was such an obligation as could be legally incurred by the municipality. This is in accord with the rules laid down in Randolph v. Shelby County, 257 Ky. 297, 77 S. W. (2d) 961. If in cases of this kind the strict legality of all expenditures made and obligations incurred during any one year must be gone into and established, it is apparent that proving merely that the outstanding warrants to be funded were for lawful purposes is not enough. Officials might satisfy some obligation which was void or illegal upon a ground other than being in excess of the annual revenue provided, or which might have been provided, and leave unpaid obli-

gations lawful in every particular. But it does not seem necessary to go that far with the proof as to warrants or obligations paid or satisfied. We are dealing with the constitutional validity in relation to fundng the debt, and that limitation is only that the taxing district shall not be permitted "to become indebted, in any amount or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year." Section 157, Constitution of Kentucky. The controlling statutes demanding proof of validity are confined to this character of question except as to outstanding warrants. Section 186c-6, 186c-7, Kentucky Statutes. If it were otherwise, it would require proof that each expenditure made during the period the debt was accumulating was originally strictly within the power of the municipality to make, and was free from error or fault in form and substance. Perhaps some of the opinions indicate otherwise. But the essential things to establish are: (1) The amount of revenue provided or which could have been provided, consisting of the application of the maximum rate authorized by the constitution to the valuation of property for taxation, plus the recognized legal sources of income reasonably to be budgeted as stable and proper; and (2) that the municipality did not become indebted beyond that amount. It is when the amounts become equal that the subsequent obligations become invalid under the constitutional limitation. The excess items of debt are those which cannot be funded. Of course, these things are to be established by facts and figures and not be mere conclusions or opinions of witnesses. See Harris v. Holt, 266 Ky. 576, 99 S. W. (2d) 759.

As may be observed from the statement of the ordinance authorizing the issuance of the bonds under consideration, it covered a debt which had accrued during 1935 and before. The ordinance was adopted September 15 and published October 30, 1936. The 1936 anticipated revenue was pleaded and proven, as was also a number of outstanding warrants issued up to as late as April 7, 1936. It is shown that up to October, 1936, the total expenditures and warrants authorized for that year had not exceeded the anticipated revenues. Debts incurred for a current year's obligations cannot be bonded where there is only an anticipated deficit. The authority is to fund an existing debt which arose from a deficit in reve-

nues lawfully provided and not to fund a part of an anticipated debt. To regard both anticipated revenues and anticipated debt is to assume a contradictory attitude. To the extent that the bonds may cover obligations incurred in 1936 they are not authorized and would be invalid.

The judgment validating the bond issue is affirmed except to the extent that the bonds may cover 1936 obligations. To that extent the judgment is reversed.