## Daily et al. v. Smith's Adm'x.
## Smith et al. v. Adkisson et al.

May 26, 1944.

R. Miller. Holland, James E. Fahey and Woodward, Dawson & Hobson for appellants.

Cary, Miller & Kirk, Byron & Sandidge, Thomas E. Sandidge, Richard H. Slack, Wm. J. Wiggington, G. Wallace Thacker, O. L. Fowler, and Wilson & Wilson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This is a consolidated suit by a taxpayer and patron of the city's electric and water plants for the use and benefit of the City of Owensboro to recover $163,227.05 of the Mayor and Commissioners in office during 1938 for the diversion of the proceeds of an issue of revenue bonds. Judgment was also asked against the sureties on their respective official bonds to the amount thereof. One of the defendants, Harry C. Smith, having died while the action was pending, the administrator of his estate was substituted. The defendants made their answers cross-petitions against 552 persons and corporations, previous creditors of the city, to whom the money had been paid, in which the cross-plaintiffs prayed recovery contingent upon their being held liable. Since they were absolved of liability, their cross-petitions were dismissed. The second styled appeal is by them, but its prosecution is upon the same contingency.

For many years Owensboro had owned and operated the electric plant and water works supplying the inhabitants. While separate books of account were kept, the

funds of the plants were deposited in a single bank account. The net earnings were regarded as revenue going into the general fund of the city. During these many years no charge was made on the books of the two plants against the municipality as such for the street lights and other electricity, including that used to operate the water works; nor for the water used by the city. When the defendants went into office in January, 1938, the city had a debt of over $221,000, including obligations incurred for the electric and water plants. Of this total $51,000 was evidenced by funding bonds. The city's credit was seriously impaired and further financing of the municipal government was considerably embarrassed. The creditors were demanding payment and suits were threatened. During the course of the years, and especially the three next preceding, the general fund, into which the revenues from the utilities had gone, had been used in making repairs and improvements of the electric plant and system. The circuit court found that the amount spent for these purposes from June 1, 1935, to December 31, 1937, was $280,813.59. This included $57,868.18, represented by outstanding warrants. These payments and obligations were largely responsible for the deficit in the general fund and the indebtedness of the city.

As a solution of the financial problem, the commissioners were advised by the City Attorney and other competent lawyers that it would be proper and legal to issue revenue bonds of the electric plant in the sum of $250,000 and use the proceeds to pay the city's general indebtedness and outstanding warrants issued by the Light and Water Department. Of considerable persuasion was the case of Owensboro Water Works Company v. City of Owensboro, 96 S. W. 867, 29 Ky. Law Rep. 1118, involving the proceeds of an issue of $200,000 of bonds voted in 1900 for the purpose of constructing the water works plant. The opinion apparently or tacitly approved the use of about $23,000 to reimburse the general fund for money spent in preliminary construction work. Accordingly, on February 28, 1938, the Board of Commissioners duly enacted an ordinance providing for the issuance and sale of $250,000 of electric light and power revenue bonds. The net yield from the sale on March 12, 1938, was $241,696. This was deposited to the credit of the "Light & Water Department fund." About the same time $150,000 was transferred out of that account to the credit of the city's general fund and used in

the payment of general obligations. The balance was used to cover a large overdraft in the Light & Water Department fund account and to pay some of the obligations of those utilities, part of which had been incurred for necessary repairs and improvements of the plants. The defendants conceded that only $66,371.71 of the proceeds of the bonds had been used for the purpose of making later improvements of the electric system. The plaintiff maintains that only $7,922 was used for that legitimate purpose. We need not inquire into the exact amount.

The applicable statute then current was Sec. 3480d-1 et seq., Kentucky Statutes. This statute authorized the city to acquire, maintain and operate an electric plant and to issue bonds payable exclusively out of the revenues of the plant for the purpose of defraying the cost, including the making of "extensions and necessary appurtenances thereto." Sec. 3480d-2 contains as the condition for issuing the bonds that the city shall adopt:

"An ordinance specifying the *proposed* undertaking, the amount of bonds to be issued * * *. Such ordinance shall further provide that the *proposed* electric light, heat and power plant and appurtenances which is to be acquired or constructed or the *proposed* extensions thereto are to be made pursuant to the provisions of this act." (Our emphasis.)

Section 3480d-6 provides:

"All moneys received from any bonds issued pursuant hereto shall be applied *solely* for the purchase, establishment, or erection of such electric light, heat and power plant and extensions thereto and necessary appurtenances, provided such moneys may be used also to advance the payment of the interest on bonds during the first three years following the date of such bonds." (Our emphasis)

The ordinance was in strict accord. It is stated in the title that the proceeds of the bonds should be employed, "for the purpose of defraying the cost of extending and improving the municipally owned electric light and power system of the City of Owensboro." The ordinance itself provided: "All moneys received from any bonds issued pursuant hereto, exclusive of accrued interest, shall be applied *solely* to payment for improve-

ment and extensions to said system.'' (Our emphasis)
Each bond carried the following statement:

"This bond is issued by the City of Owensboro,
Kentucky, pursuant to an ordinance duly enacted by its
Board of Commissioners for the purpose of providing
funds to pay the cost of necessary improvements and
extensions of its municipal electric light and power sys-
tem under and in full compliance with the constitution
and statutes of the Commonwealth of Kentucky, includ-
ing Chapter 119 of the Acts of the General Assembly of
Kentucky, 1932, and is payable only from a fixed portion
of the income and revenues from the operation of said
electric light and power system ordered set aside as a
special fund and pledged for that purpose, and identi-
fied as the 'Electric Light and Power Revenue Bond and
interest Redemption Account.' ''

We are of opinion that it was never contemplated by
the Legislature that revenue bonds of this character
should be issued to refund money already paid and ex-
pended years before, or even recently, in improving and
extending the facilities of a municipally owned electric
light and power plant. We do not find any authority for
it either in the letter or in a liberal construction of the
statute that would sustain such action as being within its
intent or spirit. On the other hand, the funding of such
debts by general bonds is a recognized legal method. A
purchaser of one of these bonds, even should he look be-
yond the terms of the instrument itself to the statute and
to the ordinance, could find nothing contrary to the stip-
ulation that the proceeds were to be used to improve the
utility and make it more productive. In short, the use of
the funds must be current or prospective. The reason for
such a conclusion with respect to the security for the
bonds is exemplified by early developments in this very
project. During the summer following the sale of these
bonds, the city had an engineering survey made of the
properties and it pronounced them to be so obsolete and
deficient that they should be replaced. Accordingly, to
supplement a grant of over one million dollars by the
Federal Government, the city of Owensboro voted to
issue $950,000 of bonds under the plan provided for by
Section 2741L-1 et seq., and Section 3480d-1 et seq., Ky.
Statutes, for the construction of a new combined elec-
tric and water plant. See Booth v. City of Owensboro,
275 Ky. 491, 122 S. W. 2d 118. The old plant, the earn-

ings from which formed the security for the bonds involved in this case, was razed. The ordinance providing for the financing of the construction of the new utilities, however, took care of them. The point is that the security for these bonds was not new construction as contemplated by the statutes and recited in the ordinance and instruments themselves. It may be observed parenthetically, as a matter of interest, that this suit was filed a few days before the city voted those bonds.

There is no doubt that the Board of Commissioners being faced with a financial crisis, and having knowledge of the use of the general fund by their predecessors for the purpose stated, felt justified in adopting the plan to solve their problem. And since there had not been any judicial construction of the statute, and in the old case involving bonds for the original construction of the water works, this court had not declared the use of the proceeds to be improper, we cannot say that competent lawyers were without reason for their construction and counsel. There is no doubt that all parties acted in good faith. But neither the exigencies of the situation nor the good faith of the officials can make proper and legal that which is improper and illegal.

In City of Newport v. McLane, 256 Ky. 803, 77 S. W. 2d 27, 96 A. L. R. 655, pointing to the provisions of Section 180 of the Constitution of Kentucky and of the several statutes, all of which very specifically declare that sinking funds created and accumulated for the purpose of satisfying bonds of the city shall be inviolate, we described as a misappropriation of part of the sinking fund the action of the City Commissioners in transferrng a sum to the general fund until current taxes could be collected. In City of Newport v. Rawlings, 289 Ky. 203, 158 S. W. 2d 12, the Board of Commissioners had failed to place in sinking funds taxes collected for that purpose and diverted the collections to the general fund. That, too, was held to be an unlawful diversion. It is not a controlling distinction that in the instant case the fund was the proceeds of the bonds or that they were not the direct obligations of the municipality. The statutes, the ordinance and the contract with the purchasers and holders of the bonds had declared that the proceeds would be used solely for a definite and specific purpose, and the Board of Commissioners were trustees of that express trust. This court held in Owensboro Water

Works Company v. City of Owensboro, supra, that the City Council had no authority to use a part of the proceeds of the bonds to reimburse the general fund for money spent out of it for the services of brokers and that such use was a misapplication of the proceeds. See also Broadway National Bank v. Hargis, 232 Ky. 328, 23 S. W. 2d 606; Webster County v. Hall, 275 Ky. 54, 120 S. W. 2d 756. The proceeds from the sale of these utility revenue bonds should have been held and applied solely for the purpose for which they were issued and none other.

The circuit court was of the same opinion and ruled that the Commissioners were personally liable for the diversion to the extent that the city had been injured. But the court found that no injury or loss had resulted to the city because the money had been used for the payment of valid obligations. In City of Newport v. McLane, supra, looking to the personal liability of the City Commissioners for the illegal diversion of the funds, we expressed the opinion that if they could show that the money had been used to pay valid debts of the city they would have the right to set off such payments against the claims against them personally. This was confirmed in City of Newport v. Rawlings, supra. The same principle had been declared and applied in Hargis v. Commonwealth, 249 Ky. 799, 61 S. W. 2d 648.

An issue was made as to the validity of the accumulated debt of $221,000 and much proof was taken on it. After oral arguments before this court the appellants, in supplemental briefs, have challenged the correctness of the finding of the court, and submit that part of the debt had been incurred in excess of the estimated revenues for the years 1935-1936 and 1936-1937. It appears when the books for those years were closed, there was no excess of expenditures or obligations over revenues actually collected, although it is possible there was a relatively small excess when only initial estimates are regarded. Cf. Coffman v. Central City, 267 Ky. 26, 101 S. W. 2d 204. We concur in the finding of fact by the court that the debts were valid.

It is to be noted, as we stated in the beginning, that the plaintiff sued in the dual capacity of a taxpayer and a customer or patron of the light and power plant, for the "use and benefit of the City of Owensboro." Now, the city lost nothing in the transaction. Should judgment

be collected against the officials personally, the city would be ahead by that amount. Its debts would all have been paid and the recovery would be only profit through the imposition of a judgment in the nature of a penalty. The appellant argues that the loss fell upon the patrons of the old electric plant since they got nothing in return for the bonds pledging the revenue and now in course of being satisfied by proportionately heavier rates, payable over a long term of years. The plaintiff in his capacity as a customer or patron of the electric plant could not maintain an action to recover money into the general fund of the city.

The judgment is affirmed on both appeals.

Whole Court sitting.