VENTERS, J., DISSENTING:
I agree with the Majority's conclusion that Audubon Park's sanitation assessment is a tax. However, I respectfully dissent because the Majority errs in applying the so-called "offset defense" to reduce the liability established by KRS 92.340 when private citizens initiate actions against public officials who violate § 180 of the Kentucky Constitution. The General Assembly has expressly defined the amount of liability owed by public officials who violate KRS 92.340, and the Court's obligation is to enforce the statute as written by the legislature. I also dissent from the Majority's re-articulation of the offset defense because it appears to broaden its scope.
ANALYSIS
Appellants' problem begins with § 180 of the Kentucky Constitution, which says in plain unambiguous English:
Every act enacted by the General Assembly, and every ordinance and resolution passed by any county, city, town or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.[13]
*554 Condensed to its pertinent part, § 180 says that "no tax levied and collected for one purpose shall ever be devoted to another purpose." By its plain definition, "another purpose" means "any other purpose." The Constitutional framers added no postscript or epilog suggesting that this explicit prohibition should not apply to city leaders who divert tax revenue to other expenses or obligations incurred by a city that may incidentally benefit all taxpayers. The language of the prohibition is clear and absolute.
KRS 92.340 plainly provides:
If ... any city tax revenue is expended for a purpose other than that for which the tax was levied, or license fee imposed, each officer ... who, by a refusal to act, could have prevented the expenditure, and the members of the city legislative body who voted for the expenditure, shall be jointly and several liable to the city for the amount so expended.
(emphasis added).
A. Our reduction of Appellant's liability is contrary to the Separation of Powers.
The General Assembly explicitly states that violators of the statute "shall be jointly and several liable to the city for the amount so expended ." The language could not be simpler or clearer: the liability is for the amount expended upon any purpose other than the one for which the tax was levied. The statute grants no right to offset that liability simply because the wrongful expenditures incidentally benefited the taxpayers. The General Assembly said in no uncertain or ambiguous terms, city officials are liable "for the amount so expended." By what authority or common law theory does this Court alter that statutory directive?
The Court of Justice has a constitutional obligation under our strong separation of powers doctrine to respect the plain and unambiguous language of a statute. "We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." Beckham v. Board of Educ. of Jefferson County, 873 S.W.2d 575, 577 (Ky. 1994). "[I]t is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there." Commonwealth v. Gaitherwright, 70 S.W.3d 411, 413 (Ky. 2002). Nevertheless, the Majority opinion does exactly that.
With respect to another legislatively-created cause of action, the Kentucky Whistleblower Act, we said in Pennyrile Allied Community Services, Inc. v. Rogers:
While some may doubt the prudence of a law that allows such an action, it is not the role of the judiciary to pass upon the wisdom of a statute. Our constitutional authority is to ascertain the meaning of the statute, based not upon what the legislature may have intended to say, but upon the meaning of what it did say.
459 S.W.3d 339, 344 (Ky. 2015).
I am sympathetic to the Appellant's dilemma. I presume they acted with the best of intentions and perhaps upon unsound advice, but sympathy for a litigant does not authorize this Court to flinch from its Constitutional duty to enforce the law as written by the legislature. This Court did not create the liability Appellants now face, and it is not our place to alter that liability.
*555 Following this law is not difficult. If the garbage recycling program of the City of Audubon Park no longer needed all the money generated by Ordinance No. 0003 Series 2007 and money was needed for "another purpose," a legal solution was simple. City leaders could have repealed or reduced the garbage assessment and enacted a new ordinance to levy a tax devoted to that other purpose. Every person competent enough to hold a municipal office can read KRS 92.340 and know exactly the meaning of what the legislature said, what it did not say, and the consequences of ignoring the statute. The offset defense is not there.
B. Our precedent does not authorize the application of the offset defense.
The Majority justifies its application of the offset defense on the premise that our predecessor court applied the offset defense to reduce the liability established for similar claims brought under Ky. Stat. § 3175, the forerunner of KRS 92.340. I respectfully disagree. Even under Ky. Stat. § 3175, the legislature provided no offset defense, so, if our predecessor court excused liability on that basis, it too overreached its authority.
However, contrary to the Majority's analysis, the offset defense was never applied in any case of liability established for a violation of Ky. Stat. § 3175. In each of the cases cited by the Majority, the cause of action created by Ky. Stat. § 3175 was found to be inapplicable because the city officials never violated Ky. Stat. § 3175. Any liability imposed upon city officials was based upon their violations of duties imposed under other statutes, not the expenditure of funds for a purpose other than that stated in the taxing ordinance. Neither KRS 92.340, nor its predecessor, Ky. Stat. § 3175, nor Section 180 of the Constitution, contains any language from which this Court can surmise the legislative intent to reduce the amount of the liability explicitly stated in the statute.
Soon after the enactment of Ky. Stat. § 3175 in the 1890's, our predecessor court in Duncan v. Combs stated:
the whole purpose of this statute is to prevent officers of a city from collecting from the citizens and taxpayers thereof money under a void ordinance, and the penalty imposed is both upon those who participated in the passage of such an ordinance and those who suffered the expenditure of money collected thereunder. This is the plain, unambiguous meaning of the statute.
131 Ky. 330, 115 S.W. 222, 224 (1909).
In Duncan , a citizen of Lexington filed an action against city officials pursuant to Ky. Stat. § 3175 to recover tax revenues raised for one purpose but diverted to another. The ordinance that levied the tax stated a purpose for the tax. The Duncan Court noted that Ky. Stat. § 3175 created no liability under those circumstances, despite the obviously constitutional diversion. Id. at 225. The complaint was dismissed, and since no liability could be imposed, there was no mention of any "offset defense."
The next case to consider possible liability under Ky. Stat. § 3175 is City of Newport v. McLane, 256 Ky. 803, 77 S.W.2d 27 (1934), where the Court again confronted a violation of Ky. Const. § 180 by city leaders. Citing Duncan , the Court again recognized that, despite the violation of § 180, Ky. Stat. § 3175 imposed no liability. The taxing ordinance did, indeed, state a purpose for the tax, so the diversion of that revenue fell outside the purview of Ky. Stat. § 3175.
The McLane Court recognized the Constitutional violation:
There is no manner in which or any purpose for which a tax levied and collected *556 for a distinctly specified purpose may thereafter be diverted so long as the purpose exists for which it was levied, without violating section 180 of the Constitution. The levying it for a distinctly specified governmental purpose is, ex necessitatas, an appropriation for a protected use, and a tax levy so appropriated is beyond the power of officials, in their discretion, to divert it.
77 S.W.2d at 31.
The Court held that this diversion of tax revenue by city officials was actionable under an alternate theory not based upon Ky. Stat. § 3175: the violation of the constitution and several statutes[14] other than Ky. Stat. § 3175, which, therefore, subjected city leaders to liability to the city as a breach of their fidelity performance bonds:[15]
The diversion [of tax revenue], as it is alleged in the petition, was a breach of their bonds. The [diversion of funds] being constitutionally invalid, it affords them no protection against their liability to the city arising out of the breach of the bond, though they acted in accordance with the resolution and thought they were doing what was best for the city. Neither expediency, nor an emergency created by their own actions, may be invoked to avert their liability arising out of their diversion of the city's fund in violation of the Constitution and in plain disregard of the Statutes.
Id. at 33. The "disregard of the Statutes" mentioned at the end of the foregoing quote refers to Ky. Stat. §§ 3190, 3192, 3194, and other provisions mandating the disposition of the tax revenue to a sinking fund for payment of the city's bonded indebtedness, not Ky. Stat. § 3175.[16] The Court described the officials conduct as "an exemplification of the evil consequences of administrative officials diverting a public fund, in violation of section 180 of the Constitution and the Statutes prescribing *557 and restricting their authority over it." Id. at 32.
The Court concluded that for this "violation of the Constitution and in plain disregard of the Statutes" in breach of their fidelity bonds, "[t]he measure of the recovery as to the members of the board is the sum diverted ."[17] Id. (emphasis added). The Court then graciously, but without statutory authority, reduced that liability to the extent that city leaders could show by clear and convincing evidence that the diverted money was used to pay valid "claims" against the city and "debts" of the city. Thus, was born the offset defense. Id. at 33.[18]
I reiterate, McLane did not apply the offset defense in connection with any liability under Ky. Stat. § 3175 because there was no liability under Ky. Stat. § 3175. That statute was not violated. The liability was assessed, and the "offset" applied, for the city officials' violation of their duty of faithful performance by violating § 180 and the above-cited statutes, which, in turn, violated their fidelity performance bonds under Section 3235c-27.
Thus, McLane does not stand as precedent authorizing the application of an offset defense for liabilities imposed under the successor statute, KRS 92.340. A few years later, the same situation recurred in City of Newport v. Rawlings, 289 Ky. 203, 158 S.W.2d 12 (Ky. 1941). Again, the Court noted that Ky. Stat. § 3175 "imposed no liability upon officers applying taxes collected under a valid ordinance to a governmental purpose other than that for which the tax was levied." Id. at 14. (emphasis added). Once again, the Court, instead, imposed liability based upon violations of other statutes, not Ky. Stat. § 3175.
For example, the city treasurer in Rawlings violated § 3142b-4 because he failed "to pay over the monies in his hands to the [police and firemen's pension] funds entitled thereto ... a violation of duty imposed on him by statute and this failure of duty is a breach of his bond conditioned upon the faithful performance of his duty such as to render his surety liable." 158 S.W.2d at 16.
The city manager in Rawlings violated his statutory duties under § 3235dd-34, § 3235dd-37 and § 3235dd-38, requiring him to see "to the proper allocation of the tax monies to the various funds and a legal disbursement thereof." The Court observed that "he permitted the diversion and unauthorized expenditure a violation of duty on his part is plainly alleged." Id.
These are not liabilities established under Ky. Stat. § 3175. With reference, not to the inapplicable cause of action created by Ky. Stat. § 3175, but to the violation of duties imposed under other statutes, the *558 Rawlings Court followed McLane : "Under the rule announced in the McLane case, if it is established that the money diverted was used in payment of valid obligations of the city then there is no liability." Id. at 12. (emphasis added).
The Majority also cites Daily v. Smith's Adm'x, 297 Ky. 689, 180 S.W.2d 861 (1944), which reiterated McLane's and Rawlings' use of the offset defense because "no injury or loss had resulted to the city because the money had been used for the payment of valid obligations." Id. at 864. Again, like McLane and Rawlings , liability was predicated upon the violations of specific statutes requiring the use of revenue to pay off bonded indebtedness. Neither KRS 92.340 nor Ky. Stat. § 3175 is mentioned in Daily .
The Majority also cites Fannin v. Davis, 385 S.W.2d 321 (Ky. 1964) as additional authority for offsetting liabilities of public officials. The offset defense is never mentioned, perhaps because Fannin has nothing whatsoever to do with diversion of tax revenue in violation of the Kentucky Constitutional § 180 or of any statute based thereon.
In summary, the Majority grants unlegislated immunity to city officials who violate the statute, and it, thereby, creates a disincentive for city officials to obey statutes and the Constitution. The kind-spirited but misplaced forgiveness we grant Appellants paves a pathway for city leaders everywhere to avert their statutory liability. The legislature did not put an offset defense into the statute because it is antithetical to the purpose of the statute. Our insertion of the offset defense defeats the purpose of the legislation.
KRS 92.340 came into existence to deter city leaders who might be tempted to deceive the public with the "bait and switch" tactic of enacting a tax for an essential purpose but then using the tax to support less palatable or unpopular objectives. The ability of private individuals, "any person," to enforce the statutory mandate puts city leaders on notice that they will be held to personal account if they deceive the public about how their tax monies will be spent. The objective of that mandate is transparency and honesty in government. Section 180 prevents city leaders from abusing the taxpayers' willingness to pay taxes needed for a popular government service and then diverting that tax revenue to another, i.e., any other, purpose.
C. Expansion of the "offset defense."
As established under McLane and Rawlings , the offset defense credited city leaders who violated specific statutes directly the specific allocation of tax revenues to specific purposes, but only to the extent that the diverted money was used to pay "valid obligations" of the city, which in both referred to valid claims against the city and debts of the city. The word "obligation" denotes something that the city has a legal duty, responsibility, or a binding commitment to pay. Those cases applied the offset to improper expenditures that served the city by reducing its debts and valid claims, not expenditures that simply contributed to the general operating needs of the city.
The Majority opinion recasts that terminology, effectively allowing a further reduction of Appellants' statutory liability to the extent that the unconstitutionally diverted funds were spent "for proper municipal obligations," such as roads and police, which are simply normal operating expenses of a city.
There is a huge difference between diverting tax dollars to reduce the city's indebtedness, its "valid obligations," and using the misdirected funds for ordinary operating expenses. Both plainly violate § 180 of the Kentucky Constitution and *559 KRS 92.340, but the former has at least the virtue of protecting the city's financial resources by paying its valid debts. The Majority's new articulation licenses city officials to unconstitutionally spend diverted tax revenue on anything they can justify as a proper expenditure under the city's operating budget, which is precisely what § 180 is intended to prohibit.
The Majority incorrectly invokes the presumption that the General Assembly implicitly intended to adopt the offset defense when it enacted KRS 92.340 because it was aware of the holdings of McLane and Rawlings . Those cases do not apply the offset defense to reduce any liability incurred for violating Ky. Stat. § 3175, so why would we presume the legislature intended it to apply in cases involving KRS 92.340, the successor of Ky. Stat. § 3175?
If the legislature is presumed to know the law, as interpreted by the Court, then the legislature was aware that McLane and Rawlings applied the defense only to reduce liability arising from the violation of statutes other than Ky. Stat. § 3175, and that it has never been applied to reduce a recovery grounded upon a statutory cause of action enforcing the mandate of § 180. I reject the Majority's proposition that the legislature's omission of any reference to the offset defense signals its tacit approval of our expansion of the statutory phrase, "liable to the city for the amount so expended," to state: "liable to the city for the amount so expended, except to the extent that illegally diverted tax revenue was spent on a valid municipal obligation ."
Our fundamental rules require the courts to apply statutory language in accordance with its plain and unambiguous meaning, and that courts should not add provisions to a statute that the legislature did not put there. The more accurate conclusion is that the General Assembly's explicit omission of an offset defense when Ky. Stat. § 3175 was rewritten as KRS 92.340, and the imposition of liability "for the amount" of any diverted expenditure in violation of § 180, strongly signifies the legislative intent to foreclose the possibility that the courts would extend the offset defense in the application of KRS 92.340.
CONCLUSION
It was said in the oral arguments to this Court that imposing liability in conformance with the actual language of the statute, thus allowing no credit by way of an offset defense, will deter good-minded citizens from serving in civic offices. That argument is disproven daily by the thousands of city officials serving throughout Kentucky who have no trouble complying with the literal commands of § 180 and KRS 92.340. More importantly, our legislature and our Constitutional framers provided a bright line rule: do not take tax money levied and collected for one purpose and spend it on any other purpose, no matter how benevolent your intentions may be. For these reasons, I dissent. I would affirm the decision of the Court of Appeals and remand the case to the trial court for a proper application of KRS 92.340 as enacted by the General Assembly.
Keller, J., joins.

This exact language has been part of § 180 since the adoption of the Kentucky Constitution in 1891. A 1996 amendment of § 180 removed a sentence authorizing the imposition of poll taxes, leaving the remainder unaffected. See 1996 c 98, § 1, amendment approved 11-5-96.

Specifically, those statutes are Ky. Stat. §§ 3190, 3192, 3194, and other provisions mandating the disposition of the tax revenue to a sinking fund for payment of the city's bonded indebtedness.

McLane at 28-29, : "Section 3235c-27 mandatorily requires the mayor and each commissioner to execute a bond to the city in the penal sum of $10,000 each, conditioned on the faithful performance of his duties upon which an action may be maintained by any person or persons interested in the keeping of the covenants therein contained." A violation of a Constitutional provision would, of course, be a violation of the official's duty of "faithful performance."

City of Newport v. McLane, 256 Ky. 803, 77 S.W.2d 27, 30 (1934) :
Section 3190 plainly requires the tax levied, collected, and deposited to the sinking fund, with which "to pay the principal and interest of the bonded indebtedness of the city," shall be "preserved exclusively for the payment of said liabilities." And section 3194 provides whenever "there shall be a surplus of said funds which cannot be applied on such terms to the extinguishment of said liabilities, the commissioners may invest the same in bonds of said city, for which it is liable in its corporate capacity, or in bonds of the state of Kentucky or of the United States; or may invest said funds in such other interest-bearing or dividend-paying securities as now authorized, or which may hereafter be authorized, by K. S. § 4706, or other general law of the state, for the investment of funds held by persons or corporations in a fiduciary capacity. Any loan or investment heretofore made of the sinking funds of a city of the second class which would be authorized and valid if made after this act takes effect, is hereby ratified." "All money, bonds and securities belonging to the sinking fund" are by section 3192 required to be "kept in a separate account, and such money, bonds and securities shall only be paid out or disposed of by the order of the commissioners of the sinking fund, and in case of money upon a warrant signed by the city clerk, countersigned by the auditor and approved by the mayor." These statutory duties are purely administrative, and in no sense legislative.

The Court noted that the liability of the officials' sureties was limited to "the amount of their several bonds." Id.

The precise articulation of the offset allowed was as follows: "We deem it proper to add that it will be competent for the commissioners and their sureties to plead the facts showing the debts and claims, to the payment of which any portion of the $79,067.70 was applied, were such as the departments to which same was apportioned by the resolution had the authority to incur and to show by clear and convincing evidence that when the sum paid thereon, out of the $79,067.70, is added to the other debts and liabilities paid out of the taxes levied for that year, the aggregate did not exceed the levy and estimated taxes thereunder for the year 1931, and to the extent that all debts and claims so paid for the year 1931 do not exceed the total estimated taxes for that year, they will be entitled to offset that portion of the claims and debts paid out of the $79,067.70 which, when so added to the other paid claims and debts, do not in the aggregate exceed the estimated taxes levied for the year 1931, against their liability for the $79,067.70, but no more." McLane at 33.