RENDERED: MAY 8, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0388-MR

SUZETTE SEWELL-SCHEUERMANN                                        APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE BRIAN C. EDWARDS, JUDGE
ACTION NO. 13-CI-006719


MICHAEL SCALISE; AL HUBER;
ANNE BRAUN; GARY VOGEL;
JOANNE BADER; JONATHAN
LEACHMAN; JUDY SCHWENKER;
MARK STEVENS; STEVE MILLER;
AND VINCE OSBOURN                                                  APPELLEES


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; L. JONES AND McNEILL, JUDGES.

McNEILL, JUDGE: Suzette Sewell-Scheuermann ("Sewell") appeals from the

Jefferson Circuit Court's determination that City of Audubon Park ("City")

officials were not personally liable for misappropriating surplus sanitation revenue

in violation of KRS[1] 92.330 and KRS 92.340, and Section 180 of the Kentucky Constitution.[2] For the reasons below, we affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

From fiscal year 2007-2008 to fiscal year 2013-2014, the City's mayor and city council approved annual ordinances setting a monthly assessment for the specific purpose of paying for trash collection and recycling ("sanitation funds"). However, the revenue produced by the assessment was substantially more than the cost of the City's contract for these services. The surplus was placed in the City's general fund and spent on other City expenses.

Sewell filed this action as a "taxpayer for the use and benefit of the City" against Mayor Michael Scalise and City Council members Al Huber, Anne Braun, Gary Vogel, Joanne Bader, Jonathan Leachman, Judy Schwenker, Mark Stevens, Steve Miller, and Vince Osbourn (collectively "Defendants"). The complaint alleged that Defendants had violated KRS 92.330 and KRS 92.340 by spending the surplus sanitation funds on "budget items unrelated to sanitation

---

[1] Kentucky Revised Statutes.

[2] While Sewell's complaint cites Section 180 of the Kentucky Constitution, as our Supreme Court noted in a previous appeal, "her claim is more narrowly focused on [the] two statutes[.]" *Scalise v. Sewell-Scheuermann*, 566 S.W.3d 539, 546 (Ky. 2018). Therefore, while we acknowledge the constitutional basis for her claim, we will focus our analysis on her arguments concerning KRS 92.330 and KRS 92.340.

services." The circuit court dismissed the complaint, finding that the City had suffered no damage. Our Court reversed, holding Defendants had violated the plain language of KRS 92.330 and were therefore jointly and severally liable to the City for the sanitation funds spent on non-sanitation expenses.

On discretionary review, the Supreme Court affirmed in part and reversed in part, holding that while Sewell had stated a valid cause of action, Defendants' liability was not absolute if they could prove that the excess sanitation funds were spent on "valid City obligations." *Scalise v. Sewell-Scheuermann*, 566 S.W.3d 539, 541 (Ky. 2018). Citing *City of Newport v. McLane*, 256 Ky. 803, 77 S.W.2d 27, 29 (1934), *City of Newport v. Rawlings*, 289 Ky. 203, 158 S.W.2d 12, 14 (1941), and *Daily v. Smith's Adm'x*, 297 Ky. 689, 180 S.W.2d 861 (1944), the Court acknowledged that a judicially-created "offset defense" had developed from this line of cases where city officials who spent money raised for one purpose on a different purpose could be "relieved of liability to the extent that they could establish the propriety of the other municipal expenditures." *Scalise*, 566 S.W.3d at 549. Although the Court declined to allow the judicially-created offset defense going forward, it explained its appeal from a policy standpoint as follows:

> Recognizing that a taxpayer has stated a valid cause of action when taxes levied for one purpose have been expended for another purpose, while continuing to acknowledge the possibility of offset, places the burden on those acting on behalf of a city to account for excess funds to the satisfaction of a court. They must establish

that all of the expenditures were for valid municipal obligations and, to the extent the expenditures were not, they are held personally accountable. The offset defense provides a shield of sorts from absolute liability, but it does not relieve the challenged parties from defending their actions in a court of law, an expensive and time-consuming proposition. For city officials who have acted in good faith, if erroneously, the offset defense prevents a scenario where they personally shoulder significant liability even though the excess funds were spent for proper municipal obligations—such as public safety (police) and public works (road crews)—that benefit all taxpayers.

*Scalise*, 566 S.W.3d at 552. The Court remanded the case back to the circuit court for Defendants to "establish how the excess revenue was spent so that the factual issue of the validity of those expenditures can be determined." *Id.* at 553.

After limited discovery, both parties filed cross-motions for summary judgment. Defendants argued that Sewell's claims were barred by qualified official immunity and the Kentucky Claims Against Local Government Act ("CALGA"), KRS 65.200 *et seq*. Alternatively, they claimed they had proven that all excess sanitation funds were spent on valid government obligations, thus the offset defense applied. Ultimately, the circuit court granted Defendants' motion and denied Sewell's, holding that Defendants had shown that the expenditures were made toward valid City obligations. It did not address Defendants' immunity claims. This appeal followed.

## STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR[3] 56.03). "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So we operate under a de novo standard of review with no need to defer to the trial court's decision." *Muncie v. Wiesemann*, 548 S.W.3d 877, 879 (Ky. 2018) (citation omitted).

## ANALYSIS

On appeal, Sewell challenges the circuit court's grant of summary judgment based upon the offset defense. Specifically, she argues the offset defense does not apply because Defendants (1) did not act in good faith and (2) did not prove that the excess sanitation funds were spent on valid City obligations. Defendants respond that they met their burden of proof for the offset defense and reassert their immunity defenses. We will first address Defendants' immunity

---

[3] Kentucky Rules of Civil Procedure.

arguments, because an asserted immunity defense is a threshold question. *See Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009) (internal quotation marks and citation omitted) ("[I]mmunity entitles its possessor to be free from the burdens of defending the action, not merely . . . from liability.").

Defendants claim they are entitled to qualified official immunity as city officials because spending decisions are discretionary and they acted in good faith. "Qualified official immunity applies only where the act performed by the official or employee is one that is discretionary in nature." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010), *as corrected* (May 7, 2010) (citation omitted). "Discretionary acts are, generally speaking, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* (internal quotation marks and citation omitted). "On the other hand, ministerial acts or functions—for which there are no immunity—are those that require only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (internal quotation marks and citation omitted). A ministerial act is one the employee must perform "without regard to his or her own judgment or opinion concerning the propriety of the act to be performed." *Bryant v. Louisville Metro Hous. Auth.*, 568 S.W.3d 839, 851 (Ky. 2019) (citation omitted).

"[T]he question of immunity is one of law that involves no disputed facts." *Meinhart v. Louisville Metro Government*, 627 S.W.3d 824, 830 (Ky. 2021). "[E]xamining the pertinent rule, policy, or regulation governing the challenged conduct is all that is necessary to make the characterization." *Id.* Thus, our first task is to classify Defendants' challenged conduct as discretionary or ministerial.

Sewell contends Defendants violated KRS 92.330 and KRS 92.340 by spending surplus sanitation funds on non-sanitation expenses. These statutes provide in relevant part:

> All taxes and license fees levied or imposed by cities of the home rule class shall be levied or imposed by ordinance. The purpose for which each tax is levied or license fee imposed shall be specified in the ordinance, and the revenue therefrom shall be expended for no other purpose than that for which the tax was levied or the license fee imposed.

KRS 92.330.

> If, in any city of the home rule class, any city tax revenue is expended for a purpose other than that for which the tax was levied or the license fee imposed, each officer, agent or employee who, by a refusal to act, could have prevented the expenditure, and the members of the city legislative body who voted for the expenditure, shall be jointly and severally liable to the city for the amount so expended. . . . [A]ny taxpayer may prosecute such action for the use and benefit of the city.

KRS 92.340.

Defendants' duty under KRS 92.330 is ministerial because it involved "merely [the] execution of a specific act arising from fixed and designated facts." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). The statute clearly mandates that "revenues . . . shall be expended for no other purpose than that for which the tax was levied[.]" Defendants are required to follow the law regardless of their "opinion concerning the propriety of the act to be performed." *Bryant*, 568 S.W.3d at 851.

While Defendants argue they were required to make a judgment call in a legally uncertain environment, citing our Supreme Court's language in *Scalise* that the offset defense had created a "gray area" in the law, that phrase did not occur in the context of qualified official immunity. In fact, the "gray area" referred to was the judicially-created offset defense itself, which the Court held had departed from the black and white language of the statute, indicating that the statute's language is clear, and that Defendants' duty was "absolute, certain, and imperative[.]" *Yanero*, 65 S.W.3d at 522. Indeed, if Defendants were immune from claims under KRS 92.330 and KRS 92.340, the statutes would be rendered meaningless. As such, they are not entitled to qualified official immunity.

Defendants also argue they are immune from liability under CALGA. We disagree. First, we seriously question whether CALGA applies to Defendants. KRS 65.2001(1) states that CALGA applies to "[e]very action in tort against *any*

-8-

*local government* in this Commonwealth . . . ." (Emphasis added.)[4] Here, Sewell's claims are against Defendants in their individual capacities. She has stated no claim against the City. In fact, her claim is on behalf of the City.

Regardless, CALGA immunity only applies to discretionary actions. *See* KRS 65.2003(3) ("Nothing contained in this subsection shall be construed to exempt a local government from liability for negligence arising out of acts or omissions of its employees in carrying out their ministerial duties."). As we have determined that Defendants' compliance with KRS 92.330 is a ministerial action, CALGA affords no protection.

Turning to the issues on appeal, Sewell argues that Defendants do not qualify for the offset defense because they failed to act in good faith and spent sanitation funds for invalid purposes. In *Scalise*, 566 S.W.3d 539, our Supreme Court found that the offset defense was available to Defendants in this case if they could "establish that the tax revenue was spent for valid City obligations." *Id.* at 541. In explaining the offset defense, the Court said: "For city officials who have acted in good faith, if erroneously, the offset defense prevents a scenario where they personally shoulder significant liability even though the excess funds were

---

[4] The statute defines local government as "any city incorporated under the law of this Commonwealth, the offices and agencies thereof, any county government or fiscal court, any special district or special taxing district created or controlled by a local government." KRS 65.200(3). Employees, agents, or officers are not included in the definition.

spent for proper municipal obligation . . . ." *Id.* at 552. The circuit court construed this language as requiring Defendants to prove two things: (1) that they acted in good faith and (2) that the expenditures were for valid city obligations.[5]

Sewell first contends that Defendants did not act in good faith as a matter of law. Noting that the Supreme Court in *Scalise* did not define "good faith," Sewell relies on definitions from Kentucky qualified official immunity cases. In that context, "[g]ood faith has often been defined by identifying the circumstances in which qualified immunity is not available, namely, when bad faith is shown." *Benningfield v. Fields*, 584 S.W.3d 731, 740 (Ky. 2019).

Citing *Yanero*, 65 S.W.3d at 523, she argues that "'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right[.]" However, Sewell is quick to concede that this could not be what the Supreme Court in *Scalise* meant by "good faith," as it was clearly aware that Defendants had violated KRS 92.330 and yet ruled the offset defense was potentially available to them. So, in a line of reasoning that is taxing to follow, she contends that

> [*Scalise*'s] requirement [that] the Defendants acted [sic] in good faith to be eligible for an offset defense must

---

[5] The Supreme Court's only specific instruction on remand was that Defendants "must establish how the excess revenue was spent so that the factual issue of the validity of those expenditures can be determined." *Scalise*, 566 S.W.3d at 553. However, the opinion seems to suggest that city officials are required to act in good faith when expending excess tax revenues to qualify for the offset defense. For purposes of appeal, we will assume that good faith is a requirement of the offset defense, since the circuit court and both parties treated it as such.

-10-

> necessarily include proof negating the Defendants' facial violation of the statutes. Otherwise, based on *Yanero* (and similar cases), the Defendants' bad faith in failing to follow the statutes would have already ended their potential offset defense.

Sewell insists that to prove good faith, Defendants must show that they "relied on case law establishing the offset defense when they illegally taxed their citizens." In support of this reliance requirement, she cites *Yanero* and *Bryant v. Pulaski County Detention Center*, 330 S.W.3d 461, 466 (Ky. 2011), *as modified* (Feb. 25, 2011), as well as Kentucky case law on estoppel and the prospective application of statutes.

We disagree with Sewell's reading of *Scalise* and other cited authorities. A more reasonable way to reconcile the Supreme Court's recognition of the applicability of the offset defense to Defendants with a requirement of good faith is to consider another definition of the term. "'[G]ood faith' most often exists in the absence of 'bad faith[.]'" *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 481 (Ky. 2006), *as corrected* (Sept. 26, 2006). While "'bad faith' can be predicated on a violation of a constitutional, statutory, or other clearly established right[,]" *Yanero*, 65 S.W.3d at 523, it can also be found where "the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.* (citation omitted). This understanding of bad faith seems more appropriate in the

-11-

context of *Scalise*. Thus, we interpret the Supreme Court's use of "good faith" in *Scalise* as meaning a lack of malice or corrupt motive.

And here, there is no evidence that Defendants acted maliciously or with a corrupt motive in expending the excess sanitation funds. There is no evidence that Defendants were appropriating funds for their own benefit or personal gain. According to deposition testimony from Arthur Henson, who audited the City's finances, the excess sanitation funds were commingled with the City's general fund and spent on other City expenditures, such as the police department, public works, administration, and debt repayment. Further, defendant and former Mayor Michael Scalise testified that he was unaware of KRS 92.330 and KRS 92.340 and would not have spent the excess funds on non-sanitation expenses had he known better. And while Sewell argues that genuine issues of fact remain concerning good faith, her argument rests on her belief that good faith requires Defendants to show they were aware of the offset defense and relied on it in their decisions concerning the excess sanitation funds. She cites no evidence of malice, corrupt motives, or willful intention to misuse taxpayer funds.

Sewell also contends that Defendants failed to prove that excess sanitation funds were spent on valid city obligations. To address Sewell's argument, we must first consider what is meant by the term "valid city obligation." In *Scalise*, the Supreme Court held that Defendants could avoid liability via the

offset defense if they could "establish that the [sanitation] revenue was spent for valid City obligations." *Scalise*, 566 S.W.3d at 541. As examples of valid city obligations, the court explicitly mentioned "public safety (police) and public works (road crews)[.]" *Id.* at 552. It also indicated that valid city obligations are things that "benefit all taxpayers." *Id.* Conversely, an invalid expenditure causes a financial loss to the city. *See id.* at 548 (quoting *Daily*, 180 S.W.2d at 864, which approved the offset defense where "the city lost nothing in the transaction. Should judgment be collected against the officials personally, the city would be ahead by that amount. Its debts would all have been paid and the recovery would be only profit . . . .").

Having established what constitutes a valid city obligation, we turn to Sewell's argument that Defendants failed to properly account for excess sanitation funds. The circuit court ruled that Defendants had proved that the excess sanitation funds were spent on valid city obligations, citing the testimony of auditor Arthur Henson, who said the funds were deposited into the City's general fund and spent on other City expenditures, such as the police department, public works, administration, and debt repayment. Sewell criticizes this evidence, arguing that Henson did not analyze each individual expense to determine its validity and contends that Defendants bore the burden of proving every dollar of excess sanitation revenue was spent on valid city obligations.

She cites *Scalise*'s directive that "[o]n remand, the Defendants must establish how the excess revenue was spent so that the factual issue of the validity of those expenditures can be determined[]" to argue that what constitutes a valid city obligation is a question of fact for the jury and not proper for summary judgment. *Id.* at 553. However, the opinion also states that Defendants must "account for [the] excess funds to the satisfaction of a court." *Id.* at 552. We believe the question of whether the excess sanitation funds were spent on valid city expenditures was a proper consideration on summary judgment.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. Here, Arthur Henson's deposition testimony established that the excess sanitation funds were deposited with the City's general fund and spent on general City expenditures such as the police department, public works, administration, and debt repayment. His audits did not reveal any invalid or inappropriate expenditures, and he opined that excess sanitation funds were spent on items and services that benefited the City's citizens.

We find this testimony sufficient to satisfy Defendants' burden under *Scalise* to show that the excess sanitation funds were spent on valid city

-14-

obligations. *Scalise* explicitly mentioned public safety and public works as examples of proper municipal obligations. There is no evidence that any of the City's general fund (where the excess sanitation funds were kept) was spent on anything that did not benefit the taxpayers generally, except for one expenditure, which we will discuss below. Further, we do not believe that *Scalise* requires that Defendants account for every single dollar expended. The uncontradicted testimony of an independent auditor is sufficient to establish that the funds were spent on valid city obligations.

Because Defendants met their initial burden on summary judgment, it was up to Sewell to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482. Sewell identifies four areas of spending that she argues violate Kentucky law and are therefore not valid city obligations. We address each in turn.

First, she argues the City used future tax year revenue to pay current tax year expenses in contravention of KRS 91A.030 and Section 157(b) of the Kentucky Constitution. Sewell claims that *City of Newport* established that spending future tax revenue on current city expenses is not a valid city obligation, citing the following language:

> We deem it proper to add that it will be competent for the commissioners and their sureties to plead the facts showing the debts and claims, to the payment of which any portion of the $79,067.70 was applied, were such as

the departments to which same was apportioned by the resolution had the authority to incur and to show by clear and convincing evidence that when the sum paid thereon, out of the $79,067.70, is added to the other debts and liabilities paid out of the taxes levied for that year, the aggregate did not exceed the levy and estimated taxes thereunder for the year 1931, and to the extent that all debts and claims so paid for the year 1931 do not exceed the total estimated taxes for that year, they will be entitled to offset that portion of the claims and debts paid out of the $79,067.70 which, when so added to the other paid claims and debts, do not in the aggregate exceed the estimated taxes levied for the year 1931, against their liability for the $79,067.70, but no more.

*City of Newport*, 77 S.W.2d at 33.

We disagree with Sewell's reading of this quote. It states that city officials are liable for any expenditures beyond the total estimated taxes for a fiscal year. Here, there is no evidence that City expenditures exceeded the estimated taxes for any given fiscal year. Therefore, to the extent that spending future tax revenue on current expenses is improper, it is not relevant to the question of what constitutes a valid city obligation under *Scalise*.

Similarly, we are unpersuaded by Sewell's contention that failing to deposit excess sanitation revenue into a separate sanitation fund in violation of KRS 91A.020 constitutes an invalid city obligation. As an obvious reason, operating on a fund basis is not an expenditure. Again, assuming this practice is improper, it does not render otherwise valid city obligations invalid.

-16-

As a third example of invalid expenditure, Sewell cites "lavish spending" by the City but provides no examples. "[C]onclusory allegations based on suspicion and conjecture are not sufficient to create an issue of fact to defeat summary judgment." *Henninger v. Brewster*, 357 S.W.3d 920, 929 (Ky. App. 2012) (internal quotation marks and citations omitted). Therefore, we need not address this argument further.

Finally, Sewell claims that retirement expenses paid under an illegal contract are not valid city obligations. Between January 2012 and February 2014, the City paid retirement benefits to two former employees pursuant to an agreement. Ultimately, it was held that the contract between the City and former employees was prohibited by KRS 65.156(6) and, therefore, void. *Reesor v. City of Audubon Park*, 2015-CA-001185-MR, 2017 WL 2615871, at *7 (Ky. App. Jun. 16, 2017). Sewell contends that using excess sanitation funds to pay for invalid retirement benefits is not a valid city obligation. We agree. *Scalise* suggests that valid city obligations are those that do not result in damage to the city. *See Scalise*, 566 S.W.3d at 548 (quoting *Rawlings*, 158 S.W.2d at 15). Further, it cited approvingly from *Daily*, 180 S.W.2d at 864, which implied that invalid city obligations are those where a city suffers a loss without gaining an associated benefit.

Paying retirement benefits under a void contract damaged the City. It did not recoup any of the funds from the former employees, resulting in a loss. Because the City had no obligation to pay the retirement benefits under an illegal contract, they were not valid city expenses. However, based on the available evidence, we cannot determine if any excess sanitation funds were used for this purpose. Defendants had the burden of proving how the excess funds were spent. Therefore, we find that a genuine issue of material fact remains as to whether excess sanitation funds were used to pay invalid retirement benefits. We thus reverse the summary judgment on this limited issue and remand for further proceedings. To the extent Defendants can prove that no sanitation funds were paid out as retirement benefits, they may move again for summary judgment.

## CONCLUSION

Wherefore, the Jefferson Circuit Court's judgment is reversed as to the limited issue of whether excess sanitation funds were used to pay invalid retirement benefits, and we remand the case for further proceedings. We affirm the Jefferson Circuit Court's judgment on all other issues.

ALL CONCUR.

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEES:

C. Dean Furman, Jr.                     Matthew C. Hess
Louisville, Kentucky                    Elizabethtown, Kentucky